IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE LOUISE BRAWLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1257-G-BN |
| | § | |
| THE CITY OF DALLAS TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michelle Louise Brawley filed this lawsuit *pro se* alleging violations of the Constitution and state law against the City of Dallas, a state agency (Child Protective Services (or CPS)), Dallas and CPS officers and employees in their official and individual capacities, and other individuals, asserting facts intertwined with multiple state court proceedings. *See* Dkt. No. 3.

Brawley also moved for leave to proceed *in forma pauperis* (IFP). *See* Dkt. No. 4. So Senior United States District Judge A. Joe Fish referred Brawley's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court granted Brawley leave to proceed IFP and denied her motion to transfer venue under 28 U.S.C. § 1404(a). *See* Dkt. Nos. 8-10.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should terminate all pending motions and dismiss Brawley's lawsuit for the reasons and to the extent set out below.

**Legal Standards**

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The same statute provides for summary dismissal of claims "seek[ing] monetary relief against a defendant who is immune from such relief." *See id.* § 1915(e)(2)(B)(iii).

"The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, but a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

And, to survive dismissal, a plaintiff must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d

890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Put differently, plaintiffs, through the complaint, must provide the Court enough factual content to demonstrate an entitlement to relief. *Compare Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), *with Robbins*, 519 F.3d at 1247 ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

## Analysis

Initially, while several specific pleading deficiencies (unique to municipal liability, immunity, state action, and federalism) apply to Brawley's allegations – and are discussed below – Brawley's allegations are mainly a collection of legal conclusions couched as facts. *See, e.g.*, Dkt. No. 3 at 6 ("Michelle was at home enjoying her fourth amendment right when an officer entered the home of Preston Smith and husband and Michelle Brawley wife, during an unverified visit an assault, injury, along with three false charges were charged against Michelle's public name by employees that work for the City of Dallas Police Department."); *id.* at 7 ("A false

claim was made."); *id.* at 7 ("The supervisor … did an illegal search of the home without Michelle's consent…. Michelle Brawley's husband Preston Smith was forced into the fraudulent safety plan.").

"[P]leadings that ... are no more than conclusions ... are not entitled to the assumption of truth. [And, w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Relatedly, where Brawley asserts specific causes of action, as to each, she "repeats and realleges each and every allegation contained in paragraphs previously set forth." *See* Dkt. No. 3 at 13-18.

Pleading in this manner is the "oppo[site of] the 'short and plain statement' requirement contemplated by Rule 8." *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019) (citations omitted), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019). And doing so makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Consequently, "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320-23 (11th Cir. 2015) (citing *Anderson*, 77 F.3d at 366); *see also Roe*, 2019 WL 5031357, at *5 ("Shotgun pleadings are subject to dismissal under Rule 12(b)(6), particularly where – as shown by the multiplicity of claims here – 'the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick.'" (quoting *S.*

*Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986))); *Lowe v. Dall. Police Dep't*, No. 3:17-cv-704-G-BN, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017) ("[M]erely attaching a label and/or legal conclusion to no facts unique to [a] claim or, at best, threadbare unique facts" "is not sufficient to state a claim that is plausible on its face."), *rec. accepted*, 2017 WL 4838980 (N.D. Tex. Oct. 26, 2017).

Moving on to the more specific pleading deficiencies, to the extent that Brawley alleges that the City of Dallas, a municipality, has violated her civil rights, "[a] person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

So, even if Brawley could allege a plausible constitutional violation – which she hasn't because her claims are conclusory – an isolated incident is not enough to allege that the City may be liable.

That is, a plaintiff may proceed on a *Monell* claim only by "identify[ing] '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that

policy (or custom)." *Hutcheson*, 994 F.3d at 482 (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)).

Accordingly, "[m]unicipalities are not liable 'on the theory of respondeat superior' and are 'almost never liable for an isolated unconstitutional act on the part of an employee.'" *Id.* (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).

And, insofar as Brawley has sued an employee of the City in his or her official capacity, "the § 1983 action against [a municipal employee in an] official capacity is, in effect, a claim against [the City]." *Palo ex rel. Estate of Palo v. Dall. Cnty.*, No. 3:05-cv-0527-D, 2006 WL 3702655, at *1 n.3 (N.D. Tex. Dec. 15, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

Turning to CPS and CPS employees sued in their official capacity, "[a]bsent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." *Stramaski v. Lawley*, 44 F.4th 318, 321-22 (5th Cir. 2022) (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 374, 276 (5th Cir. 2020)).

And the United States Court of Appeals for the Fifth Circuit "has held that Child Protective Services is 'an arm of the state under the Eleventh Amendment.'" *Noble v. CPS – Fort Worth*, No. 4:20-cv-241-P-BP, 2020 WL 5505660, at *2 (N.D. Tex. Aug. 24, 2020) (quoting *Hall v. Dixon*, No. H-09-2611, 2010 WL 3909515, *46 (S.D. Tex. Sept. 30, 2010) (citing, in turn, *Stem v. Ahearn*, 908 F.2d 1, 4-5 (5th Cir. 1990))), *rec. accepted*, 2020 WL 5500269 (N.D. Tex. Sept. 11, 2020).

So, because "Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity," *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (citing *Quern v. Jordan*, 440 U.S. 332, 340 (1979)), the Court lacks jurisdiction over claims under Section 1983 against CPS and CPS employees sued in their official capacities, *see id.* at 393-94 (citing *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014)).

And, to the extent that Brawley alleges Section 1983 claims against individuals who are not plausibly employees or officers of the City or of CPS, *see* Dkt. No. 3 at 2, "[a] plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting, in turn, *United States v. Classic*, 313 U.S. 299, 326 (1941))). And, as to these defendants, Brawley fails to allege facts to show that they exercised such power or otherwise acted under the authority of state law.

In addition, all of Brawley's claims in this civil suit appear to be intertwined with various state court proceedings, including state felony and misdemeanor prosecutions that appear to have been dismissed, *see* Dkt. No. 3 at 8, 12 (referencing

F2056352, M2057070, and M2057071), and family court or child support proceedings that may be closed or ongoing, *see id.* at 7 (referencing "305th Judicial District Court case number JC-20-00409, a CPS state claim [ ] made against Preston Smith and Michelle Brawley alleging neglect and abuse"); *id.* at 12-13 (referencing DF-16-20302, a child support proceeding against the father of Brawley's child).

Insofar as Brawley makes claims in this proceeding that implicate ongoing state court proceedings, the Court should abstain from exercising its jurisdiction over those claims under *Younger v. Harris*, 401 U.S. 37 (1971), which, "following *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10-11 (1987), [ ] also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government,'" *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008).

Section 1983 "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'" *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); citing *Younger*, 401 U.S. at 43-47).

And, under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state proceedings. *Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders

... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting, in turn, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*)); internal quotation marks omitted).

The doctrine requires that federal courts decline to exercise jurisdiction where three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); internal citations omitted); *accord Hood*, 822 F.3d at 222-23.

Of the three exceptional categories identified in *NOPSI*, which "define *Younger*'s scope," *Sprint*, 571 U.S. at 78, the unique posture of this litigation – filed to request that a federal district court direct how a state court should conduct a pending proceeding – fits within the third, *see Pennzoil Co.*, 481 U.S. at 13-14 ("Both *Juidice[ v. Vail*, 430 U.S. 327 (1977),] and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,

953 F.3d 660, 671 (10th Cir. 2020) ("[B]oth *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes." (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) ("What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings.")))).

The additional *Middlesex County* factors are present here: "In this case, the state proceedings are judicial in nature and represent important state interests, as state courts must be empowered to enforce their own orders and judgments. Moreover, [Brawley] has had opportunities to raise his federal challenges in these state proceedings and there has been no procedural bar to his doing so." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 949 (11th Cir. 2015) (per curiam); *see also Pennzoil Co.*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."); *Gates*, 885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (citing *Moore*, 442 U.S. at

425; emphasis in original)).

And, to the extent that state proceedings have concluded, such that no appeal was pending when Brawley filed this lawsuit, this federal district court lacks jurisdiction "to modify or reverse" a state proceeding under the *Rooker-Feldman* doctrine. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) ("'Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments' except when authorized by Congress." (quoting *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004))); *but see also Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022) ("*Rooker-Feldman* is inapplicable where a state appeal is pending when the federal suit is filed.").

For these reasons, Brawley's claims should be dismissed.

## Leave to Amend

The time to file objections to this recommendation (further explained below) allows Brawley an opportunity to explain how the fatal pleading deficiencies identified above can be cured and thus show the Court that this case should not be dismissed at this time and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the

plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').").

And, if Brawley fails to show that leave to amend should be granted, the Court should dismiss this case with prejudice.

### Recommendation

The Court should dismiss this action with prejudice unless, within the time to file objections, Plaintiff Michelle Louise Brawley shows a basis to grant leave to amend the complaint.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 12, 2023

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE